IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOANNE Y., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 21-cv-1050 |
|   v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Joanne Y. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIBs"). (Dckt. #13). The Commissioner brings a cross-motion seeking to uphold the decision to deny benefits. (Dckt. #18). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner, (Dckt. # 13), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #18), is denied.

**I.  Background**

    **A.  Procedural History**

On September 7, 2016, Claimant (then sixty-one years old) filed a disability application alleging disability dating back to April 15, 2014, due to numerous physical and mental issues, including cervical myofascial radiculitis, left rotator cuff tear, bilateral osteoarthritis of the

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

knees, lumbar degenerative disc disease, migraines, depression, and obesity. (R. 339, 392). Her application was denied initially on December 14, 2016, and upon reconsideration on July 11, 2017. (R. 105-32). Claimant filed a timely request for a hearing, which was held on June 4, 2019, before an Administrative Law Judge ("ALJ"). (R. 77-104). Claimant, who appeared with counsel, offered testimony at the hearing as did a vocational expert. (*Id*.). On July 10, 2019, ALJ Kimberly Cromer issued a written decision denying Claimant's application for benefits. (R. 137-56). Claimant filed a timely request for review with the Appeals Council, which remanded Claimant's case back to the ALJ on June 12, 2020. (R. 159-62). The ALJ held a second hearing of Claimant's case on October 19, 2020. (R. 37-76). The ALJ again denied Claimant's application for benefits in a written opinion signed November 3, 2020. (R. 10-36). Claimant again appealed to the Appeals Council, who denied her request for review on January 12, 2021, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Standard for Proof of Disability Under the Social Security Act

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i).

2

At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is

not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

      C.      **The Evidence Presented to the ALJ**

Again, Claimant seeks DIBs due to numerous physical and mental issues, including cervical myofascial radiculitis, left rotator cuff tear, bilateral osteoarthritis of the knees, lumbar degenerative disc disease, migraines, depression, and obesity. (R. 339, 392). Claimant alleges an onset date of April 15, 2014. Because the Court's decision relates only to the ALJ's assessment of Claimant's non-physical limitations, it will limit its discussion of the evidence accordingly.

Claimant's primary care doctor, Karen C. Catching, documented Claimant's maintenance of her dysthymic disorder beginning July 10, 2014, when she noted Claimant's mental condition was stable with her Sertraline (Zoloft) prescription. (R. 1247). At subsequent visits throughout 2015, 2016, and 2017, Dr. Catching noted Claimant's continued use of the medication to treat her dysthymic disorder and that Claimant complained of leg pain and painful frontal headaches. (R. 1248-76, 1448-58).

Claimant participated in a consultative psychological evaluation on November 15, 2016, with Dr. Michael Stone. (R. 1438). Claimant told Dr. Stone that she previously received outpatient counseling and that sometimes her performance of daily tasks was interrupted by severe depression or pain. (R. 1439). Dr. Stone noted that Claimant's "affect was flat but appropriate to content," that she appeared depressed, and "exhibited a degree of psychomotor retardation" accompanied by "experiencing helplessness, hopelessness, and anhedonia." (R. 1440). Dr. Stone reported Claimant's "behavior was appropriate" but diagnosed her with "depressive disorder, secondary to medical problems." (R. 1441). Dr. Stone further opined that

Claimant had "poor ability" to: (a) maintain attention to perform simple, repetitive tasks; (b) sustain concentration, persistence, and pace; and (c) adapt to withstand the stress and pressures associated with day-to-day work activities. (R. 1442). Dr. Stone noted that Claimant had a "fair" ability to relate to others and to understand, remember, and follow simple directions. (*Id*.).

On December 6, 2016, Claimant's DIBs claim was reviewed at the initial level by Dr. Calixto Aquino. (R. 105-15). Dr. Aquino stated that the Claimant had a history of "primary medical problems with secondary psychological difficulties." (R. 109). Dr. Aquino further noted that Claimant's psychiatric impairments were "being treated with medication" that has resulted in some improvement in her condition and was being followed by a PCP. (*Id*.). After review of Claimant's medical history and the consultative psychological examination, Dr. Aquino concluded that Claimant's mental impairments imposed "no more than mild limitation in functioning and [are] considered non-severe." (*Id*.). Accordingly, Dr. Aquino found Claimant not disabled. (R. 114). Claimant's claim was reviewed at the reconsideration level by Dr. Charles Kenney on July 11, 2017. (R. 117-32). Dr. Kenney reviewed records from 2016, including Dr. Aquino's findings, and concluded that Dr. Stone's opinion was "an overestimate of [Claimant's] restrictions [and] limitations." (R. 130). Dr. Kenney found Claimant was not disabled. (R. 132).

D. **The ALJ's Decision**

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant engaged in substantial gainful activity during the period from the alleged onset date of April 15, 2014. (R. 15). At step two, the ALJ determined that Claimant suffered from the severe impairments of cervical myofascial radiculitis, left rotator cuff tear, bilateral osteoarthritis of the knees, lumbar

5

degenerative disc disease, migraines, and obesity. (R. 16). The ALJ further noted that Claimant suffered from the medically determinable mental impairment of dysthymic disorder which caused no more than a "minimal limitation in the claimant's ability to perform basic mental work activities." (R. 17). The ALJ considered the "paragraph B" criteria for mental functioning and found that Claimant had "mild limitation" in her ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (R. 17-18). The ALJ elaborated further regarding Claimant's dysthymic disorder:

> There is a first-time mention in May 2017 of a history of dysthymic disorder. There is no evidence of any treatment. There is no evidence of any specific diagnosis. There is no evidence that it would persist at the severity level for the requisite twelve-month period. A consultative medical examination revealed minimal abnormalities. There is no evidence of cognitive testing or mental health treatment in the record. The state agency [reviewing] consultants opined that the claimant did not have a severe affective disorder.

(R. 17) (citations omitted). Because none of the "paragraph B" factors were "more than 'mild' limitation," the ALJ found them to be non-severe. (R. 18).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Regulations, including listings 1.02, "major dysfunction of a joint," 1.04, "disorders of the spine," 11.02, "epilepsy," 11.18, "traumatic brain injury," and SSR 19-2p "obesity." (R. 19). Before turning to step four, the ALJ concluded that Claimant had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that Claimant:

> Could stand/walk intermittently up to [six] hours; stand [two] hours at one time for a total of [six] hours; walk no more than [one] hour at one time for a total of [six] hours in an [eight]-hour day; never climb [up] ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop crouch, kneel; and never crawl. The claimant could use the left upper extremity occasionally for overhead reaching and could frequently reach in all directions with the left upper extremity. She could use both upper extremities frequently for handling. The claimant had to avoid concentrated exposure to extremes of cold, heat, humidity, wetness, and pulmonary irritants.

6

(R. 20). The ALJ included no non-exertional limitations. At step four, the ALJ concluded that Claimant was capable of performing past relevant work as a dental assistant (DOT code 079.361-018) and service auditor (DOT code 367.267-022), respectively classified as skilled and semi-skilled positions. (R. 28). Thus, the ALJ found Claimant was not disabled from her onset date through June 30, 2018, the date of last insured. (R. 29).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's

ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

#### A. The ALJ erred by failing to account for the limitations resulting from Claimant's mental impairments when she determined Claimant's RFC.

As outlined above, the ALJ determined that Claimant's dysthymic disorder was a non-severe impairment but caused a mild limitation in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (R. 17-18). Although the ALJ acknowledged that her step two analysis was "not a residual functional capacity assessment," and that the "mental residual functional capacity assessment used at step four . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B," (R. 18), the ALJ made *no* such assessment of limitations arising from Claimant's mental impairment in her subsequent narrative RFC assessment, nor did she account for them in her questions to the VE or in the ultimate RFC itself. (R. 20-28, 69-74, 100-02). Instead, the ALJ included a brief conclusion that Drs. Aquino and Kenney's opinions regarding Claimant's mental impairments from their denial explanations dated December 6, 2016, and July 11, 2017, were "consistent with the overall record, the lack of objective findings, and the lack of treatment for her mental impairment." (R. 27).

Claimant now argues that the ALJ erred by failing to properly consider her mental limitations when determining her RFC. (Dckt. #13 at 10). Because this argument has merit, the Court finds that a remand to the Social Security Administration is warranted and it will not

8

address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to assert them on remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC, even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g., DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin,* 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin,* No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and

pace in the RFC warrants remand."). Incorporating such limitations into the RFC is critical because even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514, at \*3; *Hovi*, 2013 WL 3989232, at \*16. Furthermore, a claimant's difficulties with memory and concentration might impact or preclude his ability to perform even unskilled work. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Craft,* 539 F.3d at 677-78).

Here, in support of the ALJ's findings, the Commissioner asserts that the "ALJ discussed the evidence that supported her severity rating in each of the B criteria . . . [and Claimant] has not persuasively shown that she was more limited in the four areas of functioning of the B criteria." (Dckt. #18 at 5). According to the Commissioner, the ALJ "was not required to accept [Dr. Stone's] pessimistic opinion that [Claimant] experienced fair and poor mental abilities. Significantly, as [Claimant] acknowledges, the ALJ also considered that the state agency reviewing psychologists concluded that [Claimant] did not have a severe mental impairment." (*Id.*).

The Court disagrees. To be sure, despite her promise at step two, the ALJ did *not* provide a "more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B" in her RFC assessment. (R. 18). Instead, she merely supplied "some weight" to DDS examiners Drs. Charles Kenney and Calixto Aquino's review of Claimant's mental health history without further explanation. (R. 27). But the ALJ's statement that the RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" is precisely the type of language that courts in the Seventh Circuit find cause confusion. *David K. v. Kijakazi*, No. 20-cv-1743, 2022 WL 2757695 (N.D.Ill July 14,

10

2022), *quoting Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334 (N.D.Ill. Apr. 8, 2022). As one court explained:

> It is unclear what the ALJ meant by saying that the RFC "reflects" his Step 2 findings concerning [claimant]'s mental limitations. He could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC. He could also have meant that he considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions.

*Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011).

Still, at step two, the ALJ found that Claimant's mental impairment of dysthymic disorder was non-severe but caused a mild limitation in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (R. 17-18). The ALJ proceeded to not include any mental restrictions in Claimant's RFC nor did she explain how Claimant's dysthymic disorder or resulting mild limitations described in step two were addressed by her RFC. (R. 17-18, 20-28).

As courts of this circuit have explained, the ALJ's errors by omission are especially problematic because the ALJ's determination of non-disability was based on her ability to perform past work as a dental assistant, a skilled position, and a service auditor, a semi-skilled position. (R. 28); *Cheryl C.*, 2019 WL 339514, at *3 (citing *Hovi*, 2013 WL 3989232, at *16). Again, even mild limitations in social functioning or concentration, persistence, or pace may impact a person's ability to perform such skilled and semi-skilled work. *See Cheryl C.*, 2019 WL 339514, at *3 (collecting cases explaining impact of mild mental limitations on skilled and unskilled positions).

Moreover, even if Claimant's dysthymic disorder was non-severe, the ALJ still had to assess it "in conjunction with the [Claimant's RFC]." *See Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013). "If the ALJ intended to incorporate restrictions caused by Claimant's mild

mental limitations into the RFC, she was obligated to explain how she did so." *Viviana R. v. Kijakazi*, No. 19-cv-07419, 2022 WL 3354840, at *5 (N.D.Ill. Aug. 12, 2022), *quoting Muzzarelli*, 2011 WL 5873793, at *23); *Anthony W.*, 2022 WL 1062334, at *3 ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole."). Conversely, if the ALJ did not believe Claimant's mental impairments warranted non-exertional limitations in the RFC, she was obligated to explain why. *Muzzarelli*, 2011 WL 5873793, at *23.

The ALJ's failure to articulate either of these explanations leaves the Court unable to follow her reasoning and, therefore, requires remand so that she can provide clarification. *Id.*, at *23-24; *see also Viviana R.*, 2022 WL 3354840, at *5 (collecting cases). On remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mental impairments' impact in the four broad areas of mental functioning, or explain why such limitations are unwarranted.[2] Moreover, the ALJ should consider providing an explanation as to the weight given to the various opinions as to the claimant's mental impairments.

Furthermore, even if this Court read the RFC to include Claimant's mild step two limitations, "remand is still required because the ALJ failed to consider the aggregate impact of all of her severe and non-severe impairments." *Muzzarelli*, 2011 WL 5873793, at *23-24 (citing *Denton*, 596 F.3d at 423, and *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *David K.*, 2022 WL 2757695, at *4 (same, citing cases); *Jacqueline J.*, 2019 WL 339588, at *4. That a non-

---

[2] The Court also notes that the ALJ's opinion misrepresented the psychiatric treatment Claimant received ("There is no evidence of any treatment . . . [or] any specific diagnosis"), (*Cf.* R. 17, *with* R. 1247, 1248-76, 1448-58), and certain of Dr. Stone's consultative examination findings ("The Consultative psychological examination also noted that her impairments were related to her medical problems."). (*Cf.* R. 18, *with* R. 1440-42). On remand, the ALJ should once more review the medical record and Dr. Stone's opinion and state what weight, if any, she affords that opinion.

12

severe impairment may not significantly limit a claimant's ability to work when viewed in isolation does not mean that it cannot "be critical to the outcome of a claim" when viewed in combination with other limitations, which here included limitations and pain stemming from severe impairments of, *inter alia,* migraines and degenerative back disorders. SSR 96-8p; *see Muzzarelli*, 20211 WL 5873793, at *23.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment, (Dckt. #13), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #18), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**Date: May 11, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**